UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RIVER OAKS MANAGEMENT, et al.                              PLAINTIFFS

v.                                    CIVIL ACTION NO. 3:06-CV-00451-S

NORMAN BROWN, et al.                                      DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court upon (1) the motion of the plaintiffs, River Oaks Management,

LLC, 8177 Mall Road Investors, LLC, Marcus & Millichap Real Estate Investment Brokerage

Company ("Marcus & Millichap"), Aaron Johnson, Matthew Snyder, and David Barker, for a

preliminary injunction (collectively "Plaintiffs"), (2) the motion of the defendants, Norman Brown,

in his official capacity as Executive Director of the Kentucky Real Estate Commission ("KREC"),

and Lois Ann Disponett, Arvel McMahan, Delbert Perry, Michael E. Plummer, and Ron Smith, in

their official capacities as Commissioners of the KREC (collectively "KREC"), for summary

judgment, (3) Plaintiffs' cross-motion for summary judgment, and (4) the oral argument of the

parties regarding the same.

To determine whether to grant a preliminary injunction, a district court must consider: (1)

whether the movant has a strong likelihood of success on the merits, (2) whether the movant would

otherwise suffer irreparable injury, (3) whether its issuance would cause substantial harm to others,

and (4) whether the public interest would be served by its issuance. *Summit County Democratic

Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004); *Blue Cross & Blue Shield

Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir.1997). These factors are not

"rigid and unbending requirements," as there is no "fixed legal standard" in determining whether

to issue an injunction. *In re: Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir.1992). While

courts have recognized the likelihood of success on the merits as one of the most significant factors in determining appropriateness of injunctive relief, a court should ordinarily analyze all of the factors before deciding whether to grant or deny the requested relief. *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006).

Meanwhile, a party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Because the motion for a preliminary injunction and the motion and cross-motion for summary judgment are all based on the constitutionality of Kentucky's so called turf-state policy, they will be collectively addressed in this Opinion.

## BACKGROUND

Plaintiffs River Oaks Management Company, LLC and 8177 Mall Road Investors, LLC are investors in commercial property who have purchased and sold Kentucky properties. They are clients of Plaintiff Marcus & Millichap, a national brokerage firm, which provides investment

brokerage services in the commercial real estate market. Plaintiff Aaron Johnson is Marcus & Millichap's principal broker in Kentucky, and Plaintiffs Matthew Snyder and David Barker are licensed Kentucky real estate agents who are involved in some of Marcus & Millichap's Kentucky listings. Defendants include the Executive Director and Commissioners of KREC, a regulatory body that governs the brokerage of real estate in Kentucky. Ky. Rev. Stat. § 324.281(5).

Up until July 2004, Chapter 324 of the Kentucy Revised Statutes permitted Kentucky brokers to compensate brokers licensed outside Kentucky: "No broker shall split fees with or compensate any person who is not licensed to perform any of the acts regulated by this chapter, *except that a broker may compensate or split fees with a broker licensed outside of Kentucky*." Ky. Rev. Stat. § 324.020(4) (2003) (emphasis added); *see also Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F.Supp.2d 541 (W.D.Ky. 2005). However, in July 2004, this provision was amended so that now a Kentucky broker may not "split fees with or compensate any person who is not licensed to perform any of the acts regulated by this chapter, *except that a broker may pay a referral fee to a broker licensed outside of Kentucky for referring a client to the Kentucky broker*." Ky. Rev. Stat. § 324.020(4) (emphasis added).

This provision is a part of Kentucky's turf-state policy, under which "anyone who is brokering real estate in this state by representing a buyer or lessee or by representing a seller or lessor in a transaction involving real property located in Kentucky must possess a valid Kentucky real estate license." Memorandum from the Ky. Real Estate Comm'n to Out-of-State Commercial Brokers ¶ 1, http://www.krec.ky.gov/pdf/commercialmemo.pdf (hereinafter Out-of-State Memo). According to KREC, "if an out-of-state broker represents a client who wishes to pursue a piece of real estate property in this state . . . [the] out-of-state broker or corporation licensed in another state [may] refer that client to a Kentucky-licensed real estate broker and receive a referral fee. Then, the Kentucky broker must handle all aspects of the transaction from that point on." *Id.* at ¶ 3.

KREC enforces this policy through its regulations, including 201 KAR 11:121 § (1)(9), promulgated in April 2005, and which makes it improper conduct for "[a] broker licensed in Kentucky to aid, abet, or otherwise assist any individual who is not actively licensed in Kentucky in the practice of brokering real estate in this state. This prohibition shall include a Kentucky broker assisting an unlicensed individual with the listing, selling, leasing or managing of any Kentucky property or assisting an unlicensed individual in representing any buyer or lessee seeking property in Kentucky. An unlicensed individual shall include an individual who may be affiliated with a national franchise and may have a license in another state but who does not have an active Kentucky license." *Id.*

Plaintiffs argue in both their motion for preliminary injunction and cross-motion for summary judgment that KREC's turf-state policy and the statutory provisions and regulations comprising the policy are unconstitutional, as they constrain interstate commerce. For the reasons stated herein, the court agrees in part and disagrees in part.

## LEGAL STANDARD

The Commerce Clause, Article I, Section 8, Clause 3 of the United Statute Constitution, is an affirmative grant of power to Congress "[t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes[.]" U.S. Const. art. I, § 8, Cl. 3. However, the Clause "has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87, 104 S.Ct. 2237, 2240, 81 L.Ed.2d 71 (1984). This limitation is referred to as the "negative" or "dormant" Commerce Clause. *Okla. Tax Comm'n v. Jefferson Lines Inc.*, 514 U.S. 175, 178-80, 115 S.Ct. 1331, 1335, 131 L.Ed.2d 261 (1995).

The dormant Commerce Clause sets forth "'the principle that one state in its dealings with another may not place itself in a position in a position of economic isolation.'" *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 537, 69 S.Ct. 657, 665, 93 L.Ed. 865 (1949) (quoting *Baldwin v.*

*G.A.F. Seelig, Inc.*, 294 U.S. 511, 527, 55 S.Ct. 497, 502, 79 L.Ed. 1032 (1935)). In other words, "states are not separable economic units." *Du Mond*, 336 U.S. at 537. "The Framers intended the Commerce Clause as a way to preserve economic union and to suppress interstate rivalry." *Dennis v. Higgins*, 498 U.S. 439, 453, 111 S.Ct. 865, 874, 112 L.Ed.2d 969 (1991).

Moreover, because the Commerce Clause "was intended to benefit those who . . . are engaged in interstate commerce," constitutional protections exist against burdens on interstate commerce. *Dennis* , 498 U.S. at 449, 111 S.Ct. 865, 872, 112 L.Ed.2d 969 (1991); *Morgan v. Virginia*, 328 U.S. 373, 376-77, 66 S.Ct. 1050, 1053, 90 L.Ed. 1317 (1946). These protections ensure "that every farmer and every craftsman shall be encouraged to produce by the certainty that he will have free access to every market in the Nation . . . [and that] every consumer may look to the free competition from every producing area in the Nation to protect him from exploitation by any." *Du Mond*, 336 U.S. at 539.

Plaintiffs do not dispute that "the occupation of real estate broker affects public welfare and may be regulated by a valid exercise of state police power." *Ledford v. Faulkner*, 661 S.W.2d 475, 477 (Ky. 1983) (citing *Shelton v. McCaroll*, 214 S.W.2d 396 (Ky. Ct. App. 1948)). Yet, as stated, that exercise must be *valid*; it must conform to limitations of the Commerce Clause. Here, Plaintiffs assert that Kentucky's turf-state policy violates the Commerce Clause by excluding out-of-state brokers from the Kentucky market. Plaintiffs assert that the policy "seeks to ban brokers licensed in other states from cooperating with Kentucky brokers in the marketing, lease, rental, sale or management of commercial property located in Kentucky, and thereby aims to exclude national brokerage firms (and, for that matter, any other out-of-state broker) from the Kentucky market, all to the economic benefit of local Kentucky brokers." As a result, Plaintiffs allege that access to Kentucky's real estate market is severely restricted.

In analyzing the constitutionality of a law under the dormant Commerce Clause, the court engages in a two-step inquiry:

(1) The court asks whether the law directly burdens interstate commerce or discriminates against out-of-state interests? *E. Ky. Res. v. Fiscal Court of Magoffin County, Ky.*, 127 F.3d 532, 540 (6th Cir. 1997).

(2) If the statute directly discriminates the court must apply the strictest scrutiny. But, if the statute does not directly discriminate, then the court applies a lower level of scrutiny and asks whether the burdens on interstate commerce are clearly excessive in relation to the putative local benefits. This is known as the *Pike* balancing test. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

We apply the two-step inquiry to those challenged provisions of Kentucky's turf-state policy, beginning with Kentucky's requirement that a person must hold a Kentucky real estate license to broker real estate in Kentucky.

## ANALYSIS

### I. Licensure Requirement, Ky. Rev. Stat. § 324.020(2)

The basis for Kentucky's turf-state policy is its licensure requirement for those engaging in real estate brokerage. Under Ky. Rev. Stat. § 324.020(2), "[n]o person shall practice real estate brokerage unless the person holds license to practice real estate brokerage under this chapter." "Real estate brokerage" is broadly defined as being "a single, multiple, or continuing act of dealing in timeshares or options, selling or offering for sale, buying or offering to buy, negotiating the purchase, sale, or exchange of real estate, engaging in property management, leasing or offering to lease, renting or offering for rent, or referring or offering to refer for the purpose of securing prospects, any real estate or the improvements thereon for others for a fee, compensation, or other valuable consideration." Ky. Rev. Stat. § 324.010(1). However, the two-step inquiry reveals that Kentucky's licensure law is a valid exercise of the state's police power.

With regard to the first step of the inquiry, a statute can discriminate against out-of-state interests in three different ways: (1) facially, (2) purposefully, or (3) in practical effect. *E. Ky. Res.*, 127 F.3d at 540 (citing *Wyoming v. Oklahoma*, 502 U.S. 437, 454-55, 112 S.Ct. 789, 117 L.Ed.2d

- 6 -

1 (1992)). "'Discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Ore. Waste Sys., Inc. v. Dep't of Envtl. Quality of Ore.*, 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994).

State laws that discriminate on their face against interstate commerce are presumptively invalid. *Id.* at 99-100. This is because facially discriminatory laws almost always reflect a state's attempt to engage in economic protectionism by isolating itself from the national economy. *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 504 U.S. 353, 361, 112 S.Ct. 2019, 2024-25, 119 L.Ed.2d 139 (1992). However, Kentucky's licensure requirement does not discriminate on its face, as it requires all persons, both residents and nonresidents, to be licensed in order to engage in brokering real estate in Kentucky. In other words, it regulates evenhandedly.

State laws that purposefully discriminate against out-of-state commerce are also unconstitutional. *Chem. Waste Mgmt. Inc. v. Hunt*, 504 U.S. 334, 344 & n.6, 112 S.Ct. 2009, 2015 & n.6, 119 L.Ed.2d 121 (1992). But, "[w]here discrimination is not patent on the face of a statute, the party challenging its constitutionality has a more difficult task [of proving discrimination]." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 423 n.12, 114 S.Ct. 1677, 1699 n.12, 128 L.Ed.2d 399 (1994) (Souter, J., dissenting). "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning." *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400, 86 S.Ct. 852, 857, L.Ed.2d 827 (1966). But, "where other sources, other than the state's own self-serving statement of its legislative intent, indicate the presence of actual and discriminatory purposes, a state's discriminatory purpose can be ascertained from [those] sources." *E. Ky. Res.*, 127 F.3d at 542 (citing *Chambers Medical Techs. of S.C., Inc. v. Bryant*, 52 F.3d 1252, 1259, 1259 n 10 (4th Cir. 1995)). However, Plaintiffs fail to provide any evidence of an underlying discriminatory purpose with regard to the licensure requirement.

Likewise, no evidence of a discriminatory effect exists. "A statute which has a discriminatory effect, for Commerce Clause purposes, is a statute which favors in-state economic interests while burdening out-of-state interests." *E. Ky. Res.*, 127 F.3d at 543 (citing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986)). In other words, "there are two complementary components to a claim that statute has a discriminatory effect on interests commerce: the claimant must show both how local economic acts are favored by the legislation, and how out-of-state actors are burdened by the legislation." *E. Ky. Res.*, 127 F.3d at 542. Yet, individuals residing outside Kentucky are not burdened by Kentucky's licensure requirement, as they have the same opportunity as in-state residents to obtain a broker's license. There is no additional hurdle out-of-state residents must overcome in order to become licensed. And, as KREC indicates, those out-of-state residents who reside in states with whom Kentucky has reciprocity, may have an easier time becoming licensed in Kentucky than in-state residents.

Given that Kentucky's licensure requirement does not directly discriminate, it will not be strictly scrutinized, and it can only be struck down if it fails *Pike* balancing. Essentially, the licensure requirement prohibits an unlicensed person from brokering in Kentucky real estate located in Kentucky. However, this burdens interstate commerce minimally, if at all, given that the prohibition is local, extending only to Kentucky's borders, both in terms of subject and location. Meanwhile, licensure ensures that persons acting in the intrastate brokerage of Kentucky property have the level of competency and professional responsibility necessary to engage in complex real estate transactions. Moreover, licensure enables the state to impose disciplinary measures on those individuals who act in a manner unbecoming the real estate profession. For these reasons, the court finds that the burdens imposed by Kentucky's licensure requirement are not clearly excessive in relation to its putative local benefits. The requirement passes *Pike* balancing.

## II. Prohibitions Against Fee Splitting and Aiding & Abetting,
## Ky. Rev. Stat. § 324.020(4) and 201 KAR 11:121 § (1)(9)

The court next considers the remaining provisions of Kentucky's turf-state policy, Ky. Rev. Stat. § 324.020(4) and 201 KAR 11:121 § (1)(9), the prohibitions on splitting fees with, and against aiding and abetting, unlicensed individuals. These prohibitions seek to deter unlicensed brokerage and enforce Kentucky's licensure requirement by (1) eliminating the fees an out-of-state broker would earn by brokering Kentucky real estate and (2) forbidding Kentucky licensed brokers from assisting out-of-state brokers in the brokerage of Kentucky real estate.

Plaintiffs, however, allege that these prohibitions restrict the interstate marketing and sale of real estate by prohibiting cooperation between Kentucky licensed brokers and out-of-state brokers. In response, KREC asserts that these provisions do not discriminate against out-of-state brokers, because the prohibitions are against *all* unlicensed individuals, whether those individuals be Kentucky residents or out-of-state residents.

Although the court agrees that these provisions appear facially neutral, the court also finds that these prohibitions have a discriminatory effect upon interstate commerce by restricting access to the national brokerage market. These provisions effectively force both owners and purchasers of Kentucky real estate to work with only Kentucky licensed brokers. While this favors in-state interests by ensuring that virtually all commissions from the sale of Kentucky real estate remain with Kentucky licensed brokers, it also burdens interstate commerce by preventing clients of Kentucky licensed brokers from having access to the national brokerage market and by inhibiting clients of out-of-state brokers from accessing the Kentucky real estate market. In other words, these prohibitions constrain interstate commerce in the purchase and sale of Kentucky real estate, isolating Kentucky from the national brokerage market, a result made unconstitutional by the Commerce Clause.

Yet, it is the result mandated by KREC, which requires that all work associated with Kentucky property must be reserved for Kentucky brokers and provides that it is illegal for out-of-state brokers to have any involvement whatsoever with the marketing and sale of Kentucky real estate. At oral argument, KREC went so far as to insist that an out-of-state broker may not even *discuss* a piece of Kentucky property with a client, as such discussion would fall within real estate brokerage. KREC asserts that it has the right to discipline and criminalize such activity, and it in its Out-of-State Memo, KREC makes clear that "this is an enforcement path that the Commission has pursued in the past." Out-of-State Memo ¶ 4.

Such penalties would deter any out-of-state broker from assisting a client in the purchase or sale of Kentucky property. That client must then retain the services of an unfamiliar, Kentucky broker or forgo making a purchase or sale of Kentucky property. A consumer should not be forced to take either option.

The purchase and sale of real estate is often a costly and complex transaction. A consumer who maintains a trusted relationship with a broker should not be compelled to accept the services of a stranger in order to make that transaction, particularly when his own broker is wholly disqualified from participating in the transaction. As the court recognized in *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F.Supp.2d 541, "the complete exclusion of [a buyer's] regular broker from a transaction may well render the foreign buyer/lessee more vulnerable to fraud." *Id.* at 550 (quoting *Furr v. Fonville Morisey Reality, Inc.*, 130 N.C.App. 541, 503 S.E.2d 401, 406 (1998)). As such, one should have the option of engaging the services of a real estate broker in whom one has confidence and trust. Yet, as KREC's policy currently stands and is enforced, that option does not exist for out-of-state consumers.

In addition, Kentucky's property owners are restricted in the marketing of their property. They cannot reach the national brokerage market, because Kentucky licensed brokers are unable to cooperate with out-of-state brokers in the interstate marketing and sale of Kentucky property.

Rather, a Kentucky licensed broker who seeks to market Kentucky property out-of-state must take on the task alone or with another Kentucky licensed broker. Absent an established out-of-state network and client base, the Kentucky licensed broker and his client would be severely disadvantaged. This further isolates the Kentucky real estate market from the nation and offends those principals underlying the Commerce Clause.

Because Ky. Rev. Stat. § 324.020(4) and 201 KAR 11:121 § (1)(9) effectively discriminate against interstate commerce, these provisions are subject to strict scrutiny, "meaning that the state must demonstrate that no reasonable alternatives are available to advance the same legitimate goals." *Heald v. Engler*, 342 F.3d 517, 524 (6th Cir. 2003). KREC fails to meet this burden. In fact, a reasonable alternative exists to advance the Kentucky's goal of protecting the public from incompetent and unscrupulous brokers.

As recognized by the court in *Skeeters*, 395 F.Supp.2d at 549-50, the North Carolina Court of Appeals found that a "North Carolina broker can . . . make certain that the guidelines, regulations and laws of this State are observed while the out-of-state broker can advise the foreign investor on matters critical to its overall interests. In such an arrangement, the North Carolina licensed broker will be legally and professionally responsible for the acts of the cooperating out-of-state broker as well as for its own acts in the venue. Such an arrangement seems to us to be clearly in line with the legislative intent embodied in Chapter 93A of the General Statutes; indeed, the complete exclusion of its regular broker from a transaction well may render the foreign buyer/lessee more vulnerable to fraud." *Furr v. Fonville Morisey Realty, Inc.*, 503 S.E.2d 401, 406 (N.C. App. 1998).

Likewise, Kentucky's goal of protecting the public from incompetent and unscrupulous brokers can be accomplished by requiring an out-of-state broker to partner with a Kentucky licensed broker who would oversee the transaction and be responsible for the actions of the out-of-state broker. This is a reasonable alternative that would ensure that Kentucky's guidelines, regulations, and laws are followed, while still permitting the free flow of interstate commerce. As

stated in *Skeeters*, "'when, as happens with increasing frequency in our state, the buyer/lessee is an out-of-state investor or corporation with complex interests and concerns best known to its regular brokers in its home state, the interests of the parties are better served if the out-of-state party is allowed to rely on the combined efforts of a local broker and a broker familiar with its particular situation.'" *Skeeters*, 395 F.Supp. at 549. (quoting *Furr v. Fonville Morisey Realty, Inc.,* 130 N.C.App. 541, 503 S.E.2d 401, 406 (1998)).

Moreover, even if the court were to find that Ky. Rev. Stat. § 324.020(4) and  201 KAR 11:121 § (1)(9) do not directly burden interstate commerce, the court still notes that these prohibitions fail under *Pike* balancing, where we ask whether the burdens on interstate commerce are clearly excessive in relation to the putative local benefits. As explained above, Ky. Rev. Stat. § 324.020(4) and  201 KAR 11:121 § (1)(9) place a heavy burden on interstate commerce, as they restrict market access and isolate Kentucky from the national market. While licensure protects the public from unscrupulous and incompetent brokers, the court cannot discern how prohibiting cooperation between an out-of-state broker and a Kentucky licensed broker reinforces this protection if the Kentucky licensed broker oversees the interstate transaction. Instead, it appears that the prohibitions' main purpose is to ensure that virtually all commissions are kept in Kentucky. This is achieved, however, at a an unconstitutional cost to interstate commerce.

Thus, the court will grant Plaintiffs' cross-motion for summary judgment in so far as it requests that the court find Ky. Rev. Stat. § 324.020(4) and  201 KAR 11:121 § (1)(9) unconstitutional with respect to splitting fees with or compensating a real estate broker licensed in another state for the interstate brokerage of Kentucky real estate and with respect to aiding an abetting a real estate broker licensed in another state in the interstate brokerage of Kentucky real estate.

### III. Injunctive Relief

In their motion for a preliminary injunction, Plaintiffs ask the court to enjoin Defendants from enforcing KREC's ban on collaboration between Kentucky licensed brokers and out-of-state brokers in the interstate brokerage of Kentucky real estate. In deciding the motion and cross-motion for summary judgment, the court has already appraised the first and most significant factor a court considers in deciding whether injunctive relief is appropriate: a strong likelihood of success on the merits. Plaintiffs have succeeded on the merits with regard to the constitutionality of Ky. Rev. Stat. § 324.020(4) and 201 KAR 11:121 § (1)(9), and, as such, the remaining factors for injunctive relief automatically weigh in favor of enjoining the enforcement of these provisions. *See ACLU of Ky. v. McCreary County, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003) (when party seeking preliminary injunction on basis of constitutional right violation establishes likelihood of success on merits, irreparable harm is established) (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001) ("no substantial harm can be said to inhere in [the] enjoinment" of a law once plaintiffs establish likelihood of success of constitutional claim); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982) ("It is in the public interest not to perpetuate the unconstitutional application of a statute").

Accordingly, Defendants will be enjoined and prohibited from (1) enforcing the prohibition against splitting fees with or compensating a real estate broker licensed in another state for the interstate brokerage of Kentucky real estate and (2) enforcing the prohibition against aiding and abetting a broker real estate broker licensed in another state in the interstate brokerage of Kentucky real estate. Bond will be fixed at one dollar ($1.00).

A separate order will be entered today in accordance with this opinion.